IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

KENDRA GREENWALD,

    Plaintiff

v.

    Case No. 21-574

LATOYA CANTRELL,
SHAUN FERGUSON,
JEFFREY M. LANDRY,
LAYNE BARNUM,
JAMES M. LEBLANC, and
KEVIN W. REEVES,

    Defendants.

## COMPLAINT – JURY DEMANDED

Plaintiff, by and through undersigned counsel, alleges as follows:

### PRELIMINARY STATEMENT

1. This case involves a Kafkaesque situation, in which an intellectually disabled woman is repeatedly arrested for failing to register as a sex offender because she lacks the intellectual capability to comply with the State's onerous registration requirements. These arrests are followed by a court finding that she is incompetent to be tried for the offense. And each arrest imposes new requirements and disrupts her living arrangements, making it even more likely that she will be re-arrested for failing to comply with the requirements.

2. Plaintiff Kendra Greenwald is a woman with a number of disabilities, including epilepsy and an intellectual disability. As a result of these disabilities, her intellectual and adaptive functioning have, over time, decreased to the point where she requires assistance to complete daily tasks such as maintaining a schedule, financial management, and using public transportation. She is functionally illiterate and reads at a first-grade level.

3. In 2012, Ms. Greenwald was convicted of carnal knowledge of a juvenile and sentenced to two years of probation. To this day, Ms. Greenwald maintains that she was the victim of a sexual assault by an armed teenager. As a result of this conviction, Ms. Greenwald must fulfill all of the requirements of Louisiana's sex offender registration and notification act ("SORNA").

4. SORNA's requirement that Ms. Greenwald restart the registration process following each release from custody, and Ms. Greenwald's inability to comply with SORNA due to her disabilities, has led to a never-ending cycle of arrest, imprisonment, release, and rearrest. She has been arrested at least seven times for failing to comply with the requirements of SORNA.

5. The failure of various state and parish entities to tailor their programs to the needs of people with disabilities like Ms. Greenwald's violates her procedural and substantive due process rights under the Fifth and Fourteen Amendments of the U.S. Constitution and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

6. Plaintiff seeks declaratory relief declaring that SORNA is unconstitutional as applied to her, and injunctive relief in the form of a waiver from all requirements of the sex offender registry that exceed her functional abilities.

**JURISDICTION AND VENUE**

7. Plaintiff brings her claims under and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

8. This Court has jurisdiction to hear Plaintiff's claims under 28 U.S.C. §§ 1331, 1343, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

9. Venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b)(1) because at least one defendant operates and performs their official duties therein and thus "resides" therein for purposes of venue.

## PARTIES

10. Plaintiff KENDRA GREENWALD is a person with multiple disabilities that limit her intellectual functioning. Ms. Greenwald was convicted of carnal knowledge of a juvenile and is thus subject to the requirements of SORNA. She currently lives in Orleans Parish.

11. Defendant JEFFREY M. LANDRY is the Attorney General of the State of Louisiana. As such, he exercises supervision over all district attorneys in the state and has authority to institute a prosecution, intervene in any proceeding, or issue advisory opinions as to the interpretation of Louisiana laws as he deems necessary for the assertion or protection of the rights and interests of the state. Defendant Landry has final authority over criminal justice policy in Louisiana, including the administration, maintenance, and enforcement of SORNA. He is sued in his official capacity.

12. Defendant JAMES M. LEBLANC is Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), and as such is DPSC's chief executive officer. DPSC's Corrections Services Division oversees adult offenders, including those on probation and parole. DPSC is charged with informing individuals subject to SORNA of its registration and notification requirements. DPSC is also responsible for obtaining and supplying the Louisiana State Police's Bureau of Identification and Information with information necessary for the registration of sex offenders. DPSC is further responsible for enforcement of all registration requirements and implementation of SORNA's electronic monitoring supervision program. As Secretary of DPSC, defendant LeBlanc oversees and controls all programs within DPSC, formulates rules and regulations, and determines policy regarding management, personnel, and total operations. He is sued in his official capacity.

13. Defendant KEVIN W. REEVES is Superintendent of the Louisiana State Police ("LSP"), a statewide law enforcement agency. LSP's Bureau of Identification and Information ("BII") maintains the Louisiana Sex Offender and Child Predator Registry ("SOCPR") and disseminates information about registrants on its public website. As Superintendent of LSP, Defendant Reeves has ultimate authority over LSP policies, practices, and decisions, including those that affect the maintenance and dissemination of the information contained on the sex offender registry. He is sued in his official capacity.

14. Defendant LAYNE BARNUM is Deputy Superintendent of LSP in charge of Support Services. LSP Support Services oversees the policies and practices of the BII, which is charged with developing and maintaining the SOCPR, including releasing offender information on its public website. He is sued in his official capacity.

15. Defendant LATOYA CANTRELL is the mayor of New Orleans. The mayor is the chief executive officer of the City of New Orleans and is charged with supervising and coordinating all other executive and administrative work of the City. The mayor has the authority to issue executive orders establishing policies and procedures for the executive branch and see that they are published promptly thereafter. The New Orleans Police Department ("NOPD") is one of the arms of the executive branch. Defendant Cantrell is sued in her official capacity.

16. Defendant SHAUN FERGUSON is the Superintendent of the NOPD. It is NOPD's responsibility to register, identify, and monitor registered sex offenders living within Orleans Parish and to take reasonable steps to address the risks those persons may pose. As Superintendent of the NOPD, Defendant Ferguson has ultimate authority over NOPD's policies, practices, and decisions as it relates to sex offenders living in Orleans Parish. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

*Ms. Greenwald's background and disabilities*

17. Ms. Greenwald was born in 1979, the oldest of six children raised by a single mother.

18. She had a tumultuous childhood, including constantly moving between Orleans Parish, Jefferson Parish, and Mississippi.

19. Many of Ms. Greenwald's family members used illegal drugs and physically abused her.

20. Ms. Greenwald was diagnosed with a seizure disorder when she was around six years old. She began receiving Social Security disability benefits for her seizure disorder when she was around sixteen years old.

21. In high school, Ms. Greenwald was provided special-education services from Jefferson Parish Schools because of her seizure disorder and other "exceptionalities."

22. Because of academic difficulties, Ms. Greenwald withdrew from high school in the tenth grade.

23. Her seizure disorder has been diagnosed as epilepsy, with seizures categorized as generalized tonic-clonic seizures. These seizures typically involve loss of consciousness, incontinence, shaking, and memory loss.

24. Over time, her seizure disorder has become significantly worse, with seizures becoming more frequent and severe.

25. Ms. Greenwald's seizures have caused brain damage, which has diminished her intellectual ability and caused short-term and long-term memory loss. For example, she often cannot remember her own address.

26. Because of her intellectual disability and memory loss issues, Ms. Greenwald struggles to manage her epilepsy, especially taking her medication regularly.

27. Without medication, Ms. Greenwald suffers seizures almost every day.

28. Even when taking her medication as prescribed, Ms. Greenwald suffers seizures approximately once per week.

29. Ms. Greenwald sleeps with her mattress on the floor to avoid injuries from seizures that occur during sleep.

30. Ms. Greenwald's disabilities prevent her from performing numerous ordinary activities without assistance. For example, she is unable to drive a car, count money or make change, use a stove, oven or microwave, go grocery shopping, use public transportation, or use most of the features on her cell phone.

31. Ms. Greenwald currently lives in Orleans Parish, though her living situation is unstable. She has been threatened with eviction from her current apartment, and intends to find a new apartment within the next year.

*Ms. Greenwald's Sex Offense Conviction*

32. On June 15, 2010, when Ms. Greenwald was 31 years old, she was arrested for carnal knowledge of a juvenile in Jefferson Parish. The juvenile in question was a 14-year-old male with a history of burglary. According to Ms. Greenwald, the young man broke into her home and threatened to harm her and her infant child. Ms. Greenwald claimed that the young man raped her. He claimed that the sex was consensual.

33. Before trial, Ms. Greenwald's attorneys challenged her competency to be tried. *See* LA C. Cr. P. art. § 641 ("Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.").

34. The court-appointed sanity commission, consisting of a psychiatrist and a psychologist, examined Ms. Greenwald and produced a written evaluation. According to the sanity

commission's 2011 report, Ms. Greenwald had Borderline Intellectual Functioning and an overall IQ score of 78. This score fell 2 standard deviations below average and placed her in the 7th percentile of test takers.

35. On February 23, 2011, the court found Ms. Greenwald to be incompetent and "not dangerous," and ordered that she receive "competency restoration" from the Forensic Outpatient Clinic run by the Eastern Louisiana Mental Health System (ELMHS). Ms. Greenwald attended competency restoration classes for approximately six months.

36. On August 3, 2011, after six months of competency restoration, the court found Ms. Greenwald competent to proceed to trial.

37. On February 6, 2012, Ms. Greenwald's counsel again raised concerns regarding her competency, but no additional competency evaluations or hearings were held.

38. Both Ms. Greenwald and the then-17-year-old alleged victim testified at trial. The jury was permitted to hear evidence that the juvenile had stolen a condom from his mother just before going to Ms. Greenwald's house. However, the court did not permit the jury to know that the juvenile had been convicted of breaking and entering other people's homes on two previous occasions.

39. On July 12, 2012, Ms. Greenwald was convicted of carnal knowledge of a juvenile, and sentenced to two years of probation. Due to this conviction, Ms. Greenwald is "required to register and provide notification as a sex offender" under SORNA. La. Rev. Stat. § 15:542(A)(1)(a).

*Ms. Greenwald's obligations under SORNA*

40. SORNA imposes numerous obligations on Ms. Greenwald. Some of these obligations are prohibitory in nature. For example, Ms. Greenwald is prohibited from living within one

thousand feet of a school, early learning center, daycare center, playground, youth center, public swimming pool, or video arcade facility. La. Rev. Stat. § 15:538(D)(1)(c).

41. SORNA also requires Ms. Greenwald to fulfill numerous affirmative obligations. Many of these affirmative obligations are difficult to understand and comply with, even for someone with an average level of intellectual functioning. For a person with Ms. Greenwald's intellectual disabilities, understanding and complying with these affirmative obligations is simply impossible.

42. For example, within three days of being released from custody, or establishing a new residence, she must appear in person to register as a sex offender with one or more law enforcement agencies or officials, including the sheriff of the parish where she resides, the chief of police (if her residence "is located in an incorporated area which has a police department"), and/or the municipal police department (if she resides "in a municipality with a population in excess of three hundred thousand persons"). *Compare* La. Rev. Stat. §§ 15:542(B)(1) (referring to the agencies/officials and factors noted above), *with* (C)(2) (referring only to the sheriff).

43. If Ms. Greenwald works or attends school in a different parish from where she resides, she must register with the sheriff, chief of police, police department, and/or campus law enforcement agency in that parish as well. La. Rev. Stat. § 15:542(B)(2), (3).

44. The information Ms. Greenwald must provide, and keep up to date, includes her address of residence (supported by two forms of proof or an affidavit from another resident); her personal phone numbers and any other phone numbers associated with the residence where she lives; the license plate and VIN numbers of any vehicles she may operate; the employer name and address of any jobs she may have; the name and address of any schools she may attend; any email addresses or screen names she may use; her hair color and weight, and any scars, tattoos

or "other identifying marks" she may have on her body; and, her fingerprints, palm prints, and a DNA sample. La. Rev. Stat. § 15:542(C)(1).

45. If any of the required information changes, or if Ms. Greenwald moves to a new residence, she must appear in person within three days to update her registration with each of the relevant law enforcement agencies. La. Rev. Stat. § 15:542.1.2(A).

46. Even if none of the required information changes, Ms. Greenwald must appear in person once a year to "update" her registration with each of the relevant law enforcement agencies.[1] La. Rev. Stat. § 15:542.1.1(A)(3).

47. She must also pay $60 per year to each law enforcement agency with which she is required to register. La. Rev. Stat. § 15:542(D). These payments must be made "in person annually on the anniversary of [the] registration period start date at the police department in h[er] municipality of residence." La. Rev. Stat. § 15:542.1.1(B)(2).

48. If Ms. Greenwald intends to stay somewhere other than her registered address for seven days or more, she must notify one or more law enforcement agencies or officials, by personal appearance, at least three days prior to doing so. La. Rev. Stat. § 15:542(C)(1), (C)(1)(n)(1) (referring to the sheriff, the chief of police and/or the police department, depending on the factors set forth in Revised Statutes section 15:542(B)); § 15:542.1.2(F)(1) (referring only to the "sheriff's office in the parish of residence").

49. Notwithstanding this prior notification requirement, if she has been absent from her registered address "for more than thirty consecutive days or an aggregate of thirty days or more per

---

[1] A person convicted of "a sexual offense against a victim who is a minor as defined in R.S. 15:541" must register in person every six months. La. Rev. Stat. § 15:542.1.1(A)(2). Confusingly, however, carnal knowledge of a juvenile is defined as a "sex offense" rather than "a sexual offense against a victim who is a minor." Compare La. Rev. Stat. § 15:541(24) (defining "sex offense") with La. Rev. Stat. § 15:541(25) (defining "sexual offense against a victim who is a minor").

9

calendar year," and is "physically present at another address during that same time period," she must make another personal appearance with the relevant law enforcement agencies within three days of crossing the 30-day threshold. La. Rev. Stat. § 15:542.1.2(A)(3). She must also notify these law enforcement agencies in writing, and provide proof of residency within the same 3-day timeframe. La. Rev. Stat. § 15:542.1.2(C), (D). If the "new" residence is in a different parish, she must also make a personal appearance with the sheriff of that parish. La. Rev. Stat. § 15:542.1.2(B). And she must perform all of the notification requirements set forth in Revised Statutes section 15:542.1, as described below, with respect to the "new" address. La. Rev. Stat. § 15:542.1.2(E)(1).

50. Within 21 days of being released from custody, moving to a new address, or crossing the 30-day threshold set forth in Revised Statutes section 15:542.1.2(E)(1), she must provide her name, address, physical description, photograph and record of conviction, by mail, to a) every resident and business within a certain radius (1 mile in a "rural" area and 3/10 of a mile in an "urban or suburban" area) of the residence to which she has moved, returned or been present for 30 days; b) the superintendent of the local school district; c) the landlord or owner of the residence; and d) the local superintendent of parks and recreation (to whom she must also provide two additional "clear, recent" photos). La. Rev. Stat. § 15:542.1(A)(1); La. Rev. Stat. § 15:542.1.2(E)(1).

51. On two separate days within that 21-day period, Ms. Greenwald must also have her photo and the other information listed above published in the "official journal" of the parish of residence, or in a newspaper that qualifies as an official journal of a political subdivision under Revised Statues section 43:140(3). La. Rev. Stat. § 15:542.1(A)(2)(a).

52. Even if she is never re-arrested, does not move to a new residence, and does not cross the 30-day threshold set forth in Revised Statutes section 15:542.1.2(E)(1), Ms. Greenwald must perform the community notifications described above, by mail and newspaper publication, every five years. La. Rev. Stat. § 15:542.1(A)(2)(b).

53. If Ms. Greenwald becomes homeless, she must appear in person every 14 days to update her registration with each of the relevant law enforcement agencies in every parish where she "regularly resides homeless." La. Rev. Stat. § 15:542.1.1(A)(4)(a).

54. With one exception,[2] the failure to fulfill any of these complicated registration and notification obligations described above is a felony punishable by imprisonment at hard labor from two to ten years. La. Rev. Stat. § 15:542.1.4(A)(1). A second or subsequent failure to fulfill any of these affirmative obligations is punishable by five to twenty years' imprisonment at hard labor. La. Rev. Stat. § 15:542.1.4(A)(2). In addition, Louisiana's habitual offender law allows prosecutors to increase the punishment range for a third failure to between ten and forty years, and for a fourth failure to between twenty years and life in prison. La. Rev. Stat. § 15:529.1.

55. The failure to fulfill these obligations need not be intentional, negligent, reckless or even knowing, as the statute imposes a standard of strict liability on those required to register. *See State v. Watts*, 2009-0912 (La. App. 4 Cir. 6/16/10), 41 So. 3d 625, 638, *writ denied,* 2010-1685 (La. 1/28/11), 56 So. 3d 966.

*Ms. Greenwald's disabilities have become much more severe since her conviction.*

56. Ms. Greenwald's seizure disorder has become much more severe in the years since her conviction, which has caused her intellectual functioning to drastically diminish since her 2011 evaluation.

---

[2] An initial failure to pay the annual registration fee is a misdemeanor punishable by up to six months in prison. Subsequent failures to pay are punished as set forth in subsections (A)(1) and (2). La. Rev. Stat. § 15:542.1.4(A)(3).

57. At the time of her pretrial competency hearing in 2011, Ms. Greenwald was found to have a full-scale IQ of 78, according to the Wechsler Abbreviated Scale of Intelligence test.

58. Seven years later, in 2018, Ms. Greenwald was evaluated by a neuropsychologist at Ochsner Medical Center.

59. The neuropsychologist used various sources of information in her evaluation, including interviews with Ms. Greenwald and her loved ones, school records, medical records, Social Security records, legal records, and various psychological tests.

60. The neuropsychologist administered four widely accepted psychological tests in 2018: (1) Test of Memory Malingering (TOMM); (2) Advanced Clinical Solutions Test of Premorbid Functioning (TOPF); (3) Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV); (4) Wide Range Achievement Test, Fourth Edition (WRAT-4); and (5) Adaptive Behavior Assessment System, Third Edition (ABAS-3).

61. When tested under the WAIS-IV in 2018, Ms. Greenwald's full-scale IQ was only 48, thirty points lower than her 2011 score on the abbreviated Wechsler test.

62. Someone with an IQ score of 70 or below is generally considered to be intellectually disabled and incompetent to stand trial under *Atkins v. Virginia,* 536 U.S. 304 (2002), and its progeny.

63. According to her 2018 neuropsychological evaluation, Ms. Greenwald scores "extremely low" in every area of intellectual functioning, and she reads at a first-grade reading level.

64. Ms. Greenwald struggles to remember basic factual information, making it difficult for her to manage her epilepsy.

65. Ms. Greenwald's adaptive functioning is also quite limited. She cannot cook, go grocery shopping, use public transportation, or use most of the features on her cell phone without assistance. She has extreme difficulty keeping appointments.

*Ms. Greenwald's disabilities make it impossible for her to comply with SORNA.*

66. Due to her disabilities, Ms. Greenwald is unable to fulfill the affirmative duties that SORNA imposes. For example, she cannot remember the date of her next appointment with law enforcement or the bus route she needs to take to get there.

67. Unsurprisingly, Ms. Greenwald began having difficulty complying with SORNA almost immediately after becoming subject to it. In fact, she struggles to understand what SORNA is and what it requires of her.

68. On September 19, 2012, less than two months after being placed on probation at her July 23, 2012 sentencing, Ms. Greenwald's probation officer filed a rule to revoke her probation, alleging that she had not paid the required fees, had failed to submit monthly supervision reports, had missed an office appointment, and had failed to complete the sex offender registration requirements.

69. Ms. Greenwald failed to appear at the probation-revocation hearing.

70. The judge in Jefferson Parish revoked Ms. Greenwald's probation on February 1, 2013 and ordered that she serve the remainder of her one-year sentence in prison. Consistent with this order, Ms. Greenwald served the remainder of her term in prison, until November 11, 2013.

71. On March 12, 2014, barely four months after completing her sentence, Ms. Greenwald was again arrested for failing to comply with SORNA. Specifically, she was arrested in New Orleans for failure to register under section 15:542.1.4(A)(1) and failure to notify under section 15:542.1.4(B)(2). Ms. Greenwald was held on a $5,000 bond, which she was unable to pay.

72. On May 2, 2014, after 51 days in jail, she accepted a guilty plea in exchange for a sentence of 18 months of probation. Because Ms. Greenwald's public defender did not raise the issue of competency, her intellectual functioning was not reassessed.

73. Less than a year later, on January 22, 2015, Ms. Greenwald was arrested a third time in Orleans Parish for failure to register under Revised Statutes sections 15:542.1.4(A)(1) and (2), and held on a $5,000 bond.

74. After 30 days in jail, Ms. Greenwald's family scraped together enough money to pay her bond, and she was released on February 20, 2015. The Orleans Parish District Attorney declined to file charges.

75. Approximately four months later, on June 29, 2015, Ms. Greenwald was arrested a fourth time in Orleans Parish for failure to register under Revised Statutes sections 15:542.1.4(A)(1) and (2). She was held on a $2,500 bond.

76. On July 14, 2015, Ms. Greenwald's public defender requested a competency hearing, and the court ordered an evaluation. Based on this evaluation, the court found Ms. Greenwald incompetent to proceed to trial and ordered that she undergo in-patient competency restoration at ELMHS.

77. On September 2, 2015, the court released Ms. Greenwald on her own recognizance. This time around, she had been in jail for 68 days. The criminal charge of failure to register remained pending against her.

78. The court held a competency hearing on October 28, 2015.

79. On October 29, 2015, the court found Ms. Greenwald incompetent.

80. The Louisiana Department of Health then evaluated Ms. Greenwald to determine whether she was a danger to herself or others.

81. After hearings on November 19, 2015, December 1, 2015, and January 28, 2016, the court found that Ms. Greenwald was not dangerous.

82. On June 23, 2017, the court found Ms. Greenwald to be an "unrestorable incompetent."

83. After her fourth failure-to-register arrest, and despite being incompetent to stand trial, Ms. Greenwald was arrested for failure to register three more times.

84. Ms. Greenwald was arrested for failure to register a fifth time in Orleans Parish on February 17, 2016. She spent two days in prison before released on her own recognizance.

85. Ms. Greenwald was arrested for failure to register a sixth time in Orleans Parish on June 15, 2017. She spent nine days in prison before released on her own recognizance.

86. Ms. Greenwald was arrested a seventh time for failure to register in Jefferson Parish on October 24, 2017. She spent 21 days in prison before her family paid her bond.

*Assistance provided by Orleans Parish Public Defenders Office*

87. The Orleans Parish Public Defenders Office (OPD) has represented Ms. Greenwald in each of her arrests in Orleans Parish for failure to register.

88. In July 2018, OPD sent a letter to the NOPD asking that it refrain from arresting Ms. Greenwald for failure to register under SORNA, because she is functionally incapable of complying with SORNA's requirements. The NOPD did not respond.

89. Despite being beyond the scope of its mandate, which is to defend people with open criminal cases, OPD helped Ms. Greenwald maintain compliance with SORNA for several years thereafter, in order to prevent her from being rearrested.

90. During this time, OPD compiled and submitted the necessary SORNA paperwork on Ms. Greenwald's behalf, and assisted her in fulfilling SORNA's postcard and newspaper notification requirements.

91. OPD assisted Ms. Greenwald in setting aside a portion of her Social Security benefits each month, so that she could save enough money to pay the various fees and costs associated with SORNA compliance.

92. OPD also assisted Ms. Greenwald in making in-person appearances with the NOPD, as required by SORNA.

93. Due to limited resources, OPD is no longer providing assistance to Ms. Greenwald.

*Ms. Greenwald is at constant risk of re-arrest*

94. In July of 2022, Ms. Greenwald must appear at NOPD to pay her $60 annual fee, as well as bring her ID and two pieces of mail to prove her current address. However, she will not remember the date of her next appointment or the bus route she needs to take to get there. Without assistance, she will not be able to comply with these requirements.

95. Ms. Greenwald's living situation is unstable. While being assisted by OPD, her current landlord threatened to evict her. She intends to find a new apartment within the next year. When Ms. Greenwald moves to a new residence, she must submit new postcards and newspaper notices, which she has a demonstrated inability to accomplish due to her disabilities. If she becomes homeless, she must make a personal appearance every 14 days at one or more law enforcement agencies in every parish where she "regularly resides homeless" – a vague and confusing requirement that Ms. Greenwald is unable even to comprehend.

96. Ms. Greenwald does not understand what SORNA is and she is functionally unable to comply with it unless provided substantial assistance. In short, Ms. Greenwald is unable to fulfill the affirmative duties that SORNA imposes due to her disabilities.

97. Without OPD's assistance, Ms. Greenwald will inevitably fall out of compliance and be arrested, which will just as surely result in another finding that she is incompetent to stand trial.

98. The level of competence required to comply with SORNA is significantly higher than the level of competence required to stand trial. Ms. Greenwald meets neither.

## CLAIMS FOR RELIEF

**First Claim: Violation of Procedural Due Process**

99. The Defendants' actions and omissions violate the Fifth and Fourteenth Amendments to the U.S. Constitution.

100. SORNA, as applied to Ms. Greenwald, deprives her of liberty without meaningful notice or an opportunity to be heard.

101. Ms. Greenwald has suffered injuries as a result of these violations.

102. Ms. Greenwald asserts this claim under 42 U.S.C. § 1983 and *Ex Parte Young*.

103. Ms. Greenwald asserts this claim against all Defendants.

104. Ms. Greenwald's claim arises through joint conduct of the Defendants.

**Second Claim: Violation of Substantive Due Process**

105. The Defendants' actions and omissions violate the Fifth and Fourteenth Amendments to the U.S. Constitution.

106. SORNA, as applied to Ms. Greenwald, deprives her of fundamental rights without adequate justification.

107. Ms. Greenwald has suffered injuries as a result of these violations.

108. Ms. Greenwald asserts this claim under 42 U.S.C. § 1983 and *Ex Parte Young*.

109. Ms. Greenwald asserts this claim against all Defendants.

110. Ms. Greenwald's claim arises through joint conduct of the Defendants.

**Third Claim: Cruel and Unusual Punishment**

111. The Defendants' actions and omissions are cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.

112. SORNA, as applied to Ms. Greenwald, is cruel and unusual punishment because it punishes her for an involuntary and unavoidable consequence of her disabilities.

113. Ms. Greenwald has suffered injuries as a result of these violations.

114. Ms. Greenwald asserts this claim under 42 U.S.C. § 1983 and *Ex Parte Young*.

115. Ms. Greenwald asserts this claim against all Defendants.

116. Ms. Greenwald's claim arises through joint conduct of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that the Defendants' conduct as set forth above violates Ms. Greenwald's procedural and substantive due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, and her right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution;

2. Entering an injunction directing that the Defendants refrain from arresting Ms. Greenwald for failure to comply with SORNA;

3. Awarding compensatory damages and nominal damages to Ms. Greenwald for injuries caused by the Defendants;

4. Awarding costs and attorney's fees to Ms. Greenwald, consistent with 42 U.S.C. § 1983.

5. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which she is entitled.

Respectfully submitted,

October 8, 2021

\_\_/s/ Chris Edmunds_____
Chris Edmunds, LA Bar No. 37670
Chris Edmunds Law Office, LLC
4937 Hearst St, Suite 2F
Metairie LA 70001
504-314-0034 (phone)
chrisedmundslaw@gmail.com


\_\_\_/s/ Laura Reeds_____
Laura Anne Reeds, LA Bar No. 34719
Disability Rights Louisiana
8325 Oak Street
New Orleans, Louisiana 70118
504-517-9103 (phone)
504-517-9096 (fax)
lreeds@disabilityrightsla.org