# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**KENDRA GREENWALD**                          **CIVIL ACTION**

**VERSUS**                                     **NO: 22-2371**

**LATOYA CANTRELL ET AL.**                     **SECTION "H"**


## ORDER AND REASONS

Before the Court are Defendants' Motions to Dismiss (Docs. 61, 67). For the following reasons, the Motion to Dismiss filed by Attorney General Jeffrey Landry; Deputy Superintendent of Louisiana State Police Chris Eskew; Secretary of the Louisiana Department of Public Safety and Corrections James M. LeBlanc; and Superintendent of Louisiana State Police Lamar Davis is **GRANTED IN PART**. The Motion to Dismiss filed by Mayor of New Orleans Latoya Cantrell and Chief of New Orleans Police Department Shaun Ferguson is **GRANTED**.


## BACKGROUND

In 2012, Plaintiff Kendra Greenwald was convicted of a sex offense and subsequently required to comply with the registration and notification mandates described in Louisiana's Sex Offender Registration and Notification Act (SORNA). Plaintiff suffers from a seizure disorder that has become worse

over time, caused brain damage that has diminished her intellectual ability, and caused short-term and long-term memory loss. Plaintiff alleges that her intellectual disability prevents her from complying with the onerous registration requirements of SORNA. Plaintiff has been arrested at least seven times for failing to comply with the requirements of SORNA. After her fourth arrest in July 2015 for failure to comply with the requirements of SORNA, the court ordered a competency evaluation and found Plaintiff to be an "unrestorable incompetent." Thereafter, Plaintiff was arrested three more times for failure to comply with SORNA and held in jail for several days each time.

Plaintiff now brings this suit in an effort to put an end to the ongoing cycle of arrest, imprisonment, release, and rearrest. Plaintiff brings § 1983 claims for violations of her procedural and substantive due process rights under the Fifth and Fourteenth Amendments and violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiff seeks both compensatory and injunctive relief against various state and city officials in their official capacities, including Attorney General Jeffrey Landry; Deputy Superintendent of Louisiana State Police Chris Eskew;[1] Secretary of the Louisiana Department of Public Safety and Corrections James M. LeBlanc; Superintendent of Louisiana State Police Lamar Davis[2] (collectively, the "State Defendants"); Mayor of New Orleans Latoya Cantrell and Chief of New

---

[1] In her Complaint, Plaintiff named former Deputy Superintendent of the Louisiana State Police Layne Barnum, who has since retired. Col. Chris Eskew was automatedly substituted as a party.

[2] In her Complaint, Plaintiff named former Superintendent of the Louisiana State Police Kevin Reeves, who has since retired. Col. Lamar Davis was automatedly substituted as a party.

Orleans Police Department Shaun Ferguson (collectively, the "City Defendants").

The State Defendants and City Defendants have each separately moved for dismissal of Plaintiff's claims against them on various grounds. Each argue that Plaintiff has failed to state a claim under § 1983 for violations of her Fifth, Eighth, or Fourteenth Amendment rights. The State Defendants also move for dismissal of Plaintiff's claim for money damages and for dismissal of her claims against the Attorney General. The City Defendants argue that Plaintiff has failed to allege an unconstitutional policy promulgated by the City Defendants as required by *Monell*. This Court will consider each argument in turn.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[3] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[5] The court need not, however, accept as true legal conclusions couched as factual allegations.[6] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[7] If it is apparent from the face of the complaint that

---

[3] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[4] *Id.*

[5] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[6] *Iqbal*, 556 U.S. at 678.

[7] *Id.*

an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[8] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[9]

## LAW AND ANALYSIS

### A. Claims for Money Damages

First, the State Defendants argue that Plaintiff cannot succeed on her § 1983 claim for money damages against them in their official capacities. Plaintiff does not dispute that the Eleventh Amendment bars claims for compensatory damages against the State Defendants in their official capacities.[10] She argues, however, that her claims for nominal damages should not be dismissed because they provide prospective relief. The Supreme Court has rejected that argument. In *Arizonans for Official English v. Arizona*, the Supreme Court held that nominal damages were not available under § 1983 against a State.[11] Accordingly, Plaintiff's claims for nominal damages against the State Defendants in their official capacities are dismissed. However, *Ex Parte Young* provides an exception to Eleventh Amendment immunity "that allows private parties to bring suits for injunctive or declaratory relief against

---

[8] *Lormand*, 565 F.3d at 255–57.
[9] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[10] Doc. 26.
[11] 520 U.S. 43, 69 (1997).

individual state officials acting in violation of federal law."[12] Therefore, Plaintiff's claims for injunctive relief may proceed.[13]

### B. Claims against Attorney General Jeffrey Landry

Next, the State Defendants argue that the claims against Attorney General Jeffrey Landry should be dismissed because the Complaint does not allege any connection between the Attorney General and the relief sought. For the *Ex Parte Young* exception to Eleventh Amendment immunity to apply, "the state official, by virtue of his office, must have some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party."[14] What constitutes a sufficient connection is not clear from Fifth Circuit jurisprudence.[15] However, the Fifth Circuit has at times held that "[t]he required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[16] The Fifth Circuit has also held that the requisite connection "requires some scintilla of

---

[12] City of Austin v. Paxton, 943 F.3d 993, 997 (5th Cir. 2019).

[13] Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.").

[14] *City of Austin*, 943 F.3d at 997 (internal quotations omitted).

[15] *Id.* at 999.

[16] Texas Democratic Party v. Abbott, 978 F.3d 168, 181 (5th Cir. 2020) (quoting Morris v. Livingston, 739 F.3d 740, 746 (5th Cir. 2014)).

'enforcement' by the relevant state official with respect to the challenged law."[17] "'Enforcement' for *Young* purposes means 'compulsion or constraint.'"[18]

Plaintiff alleges that the Attorney General has a statutorily defined role in enforcing SORNA because he is required by state law to maintain a statewide Sexual Predator Apprehension Team ("SPAT"). SPAT is charge with targeting, monitoring, arresting, and assisting in the prosecution of sex offenders and violators of sexual offender registration requirements, as well as training local law enforcement to do the same.[19] This Court finds the Attorney General's duty to maintain a team tasked with enforcing the sex offender registration requirements at issue here sufficient to create the requisite connection to enforcement required under *Ex Parte Young*.[20] Accordingly, the Court holds that Attorney General Jeffrey Landry is a proper party to this suit, and the request to dismiss the claims against him is denied.

### C. Eighth Amendment Claims

All Defendants next argue that Plaintiff cannot succeed on her claim under the Eighth Amendment because the SORNA requirements are not "punishment." The Eighth Amendment prohibits cruel and unusual punishment. A statute may violate this Amendment if it is punitive.[21] Courts

---

[17] *City of Austin*, 943 F.3d at 1002.

[18] Richardson v. Flores, 28 F.4th 649, 655 (5th Cir. 2022), *cert. denied sub nom.* Weisfeld v. Scott, 143 S. Ct. 773 (2023).

[19] LA. REV. STAT. § 15:552.

[20] The State Defendants argue only that the Attorney General's duty to form a SPAT was not alleged in Plaintiff's Complaint. However, this Court can take judicial notice of Louisiana statutes. *See* J. M. Blythe Motor Lines Corp. v. Blalock, 310 F.2d 77, 78 (5th Cir. 1962).

[21] Smith v. Doe, 538 U.S. 84, 92 (2003).

use an intents–effects test to determine whether a statute is punitive: "'If the intention of the legislature was to impose punishment, that ends the inquiry'; but if the law was not intended to be punitive, the question becomes whether it is 'so punitive either in purpose or effect as to negate the State's intention to deem it civil.'"[22] In *Kennedy v. Mendoza-Martinez*, the Supreme Court identified factors for determining whether a statute is punitive:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment – retribution or deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which is may be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.[23]

"'[A] most significant factor' is whether the law has a 'rational connection to a nonpunitive purpose.'"[24] This inquiry "applies with equal force" in double jeopardy, Ex Post Facto Clause, and Eighth Amendment contexts.[25]

Both the Fifth Circuit and the Supreme Court have found sex offender registration statutes to be non-punitive.[26] In *Moore v. Avoyelles Correctional Center*, the plaintiff argued that the retroactive application of the neighborhood notification requirement of Louisiana's SORNA violated the Ex Post Facto Clause because it imposed additional punishment that was not

---

[22] Does 1-7 v. Abbott, 945 F.3d 307, 314 (5th Cir. 2019).

[23] 372 U.S. 144, 168 (1963).

[24] *Abbott,* 945 F.3d at 314 (quoting *Smith*, 538 U.S. at 97).

[25] *Id.*

[26] *See Smith*, 538 U.S. at 104; Moore v. Avoyelles Corr. Ctr., 253 F.3d 870, 872 (5th Cir. 2001); *Abbott*, 945 F.3d at 314 (5th Cir. 2019).

prescribed at the time the act was committed.[27] The Fifth Circuit therefore considered whether Louisiana's SORNA imposes "punishment" violating the Ex Post Facto Clause.[28] In doing so, it applied the intents–effects test to hold that Louisiana's law is non-punitive.[29] The court held that the text of the statute "clearly indicates that the legislature intended the notification provisions to prevent future attacks by recidivist sex offenders."[30] It held that the plaintiff had failed to marshal the "clearest proof" that the Louisiana law is "'so punitive in form and effect as to render [it] criminal despite [the legislature's] intent to the contrary.'"[31] "A law serving nonpunitive goals 'is not punishment, even though it may bear harshly on one affected.'"[32]

Plaintiff distinguishes *Moore* because there the plaintiff mounted a facial challenge to the constitutionality of the neighborhood notification requirement while Plaintiff alleges that SORNA is unconstitutional as applied to her. However, the Supreme Court has advised that *Kennedy* demands "evaluating the 'statute on its face' to determine whether it provide[s] for what amount[s] to a criminal sanction."[33] The Fifth Circuit has already held that SORNA is non-punitive on its face. Plaintiff's Complaint does not make any allegations that would cause this Court to reach a different decision. Plaintiff points out the "onerous" requirements of SORNA, including geographic restrictions,

---

[27] *Moore*, 253 F.3d at 872.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* (quoting United States v. Ursery, 518 U.S. 267, 290 (1996)).

[32] *Id.* at 873 (quoting Flemming v. Nestor, 363 U.S. 603, 614 (1960)).

[33] Hudson v. United States, 522 U.S. 93, 101, 118 S. Ct. 488, 494, 139 L. Ed. 2d 450 (1997) (overruling United States v. Halper, 490 U.S. 435, 448 (1989) on which Plaintiff relies).

online publication of personal information, registration requirements, newspaper publications, and the threat of prosecution for non-compliance. But these provisions are not distinct from those considered in "the sweep of the case literature holding that the registry law and similar ones are non-punitive, civil regulatory enactments. Accordingly, [Plaintiff's] asserted right to relief under Section 1983 based on an Eighth Amendment violation fails to meet the contrary weight of precedent."[34] The Defendants' motions to dismiss this claim are granted.

### D. Procedural Due Process Claims

Next, all Defendants argue that Plaintiff has not pleaded a violation of her procedural due process rights. "The Fourteenth Amendment's right to procedural due process guarantees citizens the protection of adequate procedures before allowing a state to deprive them of their property, liberty, or life."[35] The Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'"[36] Defendants argue that Plaintiff was not deprived of her procedural due process rights because she was able to contest her conviction. They argue that she is subject to the requirements of SORNA solely because of her conviction, and due process does not require a separate hearing. Indeed, the Fifth Circuit has

---

[34] Doe v. Jindal, No. CIV.A. 11-388, 2011 WL 3925042, at *11 (E.D. La. Sept. 7, 2011); *see* Smith v. State, 84 So. 3d 487, 497 (La. 2012) ("It is well-settled that Louisiana's sex offender registration requirements are not punitive[.]"); *Smith*, 538 U.S. at 104.

[35] Jordan v. Fisher, 813 F.3d 216, 222 (5th Cir. 2016).

[36] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

held that "[w]hen an individual is convicted of a sex offense, no further process is due before imposing sex offender conditions."[37]

Plaintiff points out, however, that she is not arguing that either her original conviction or the original imposition of sex offender conditions lacked due process. Rather, she argues that since she has been declared an unrestorable incompetent she has been denied any process by which to challenge the cycle of arrest, imprisonment, release, and rearrest to which she has been subjected. She alleges that after each arrest there is a judicial acknowledgement that she cannot be restored to competency, and the prosecution is terminated. She argues that she is therefore never given the opportunity to obtain a ruling that SORNA is unconstitutional as applied to her. She also argues that because her disabilities make it impossible for her to comprehend her obligations under SORNA, she is being denied constitutionally adequate notice.

The Supreme Court has identified "three distinct factors for a court to weigh in considering whether the procedural due process provided is adequate."[38]

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[39]

---

[37] Meza v. Livingston, 607 F.3d 392, 401 (5th Cir. 2010), decision clarified on denial of reh'g, No. 09-50367, 2010 WL 6511727 (5th Cir. Oct. 19, 2010).

[38] *Id.* at 402.

[39] Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Plaintiff alleges that she has a strong interest in "retaining her liberty by staying out of police custody" and that her repeated arrests are evidence that she is at risk of being erroneously deprived of this liberty interest.[40] As Defendants point out, however, she does not identify any "additional or substitute procedural safeguards" that would prevent this alleged deprivation. Plaintiff admits that she has received a hearing after each of her last four arrests in which "courts have evaluated her intellectual functioning and held that she is an 'unrestorable incompetent' who cannot constitutionally be subjected to criminal prosecution by the State."[41] It appears that Plaintiff seeks some procedure by which she can be excused from complying with the sex offender registry requirements or otherwise exempted from arrest for her failure to comply.

The Court finds the Supreme Court's reasoning in *Connecticut Dept. of Public Safety v. Doe* helpful in considering Plaintiff's claim.[42] There, the Court considered whether the plaintiff was entitled to a pre-deprivation hearing to determine whether he was likely to be "currently dangerous" before being placed on Connecticut's sex offender registry.[43] The Court dismissed the procedural due process claim, holding that the issue of the plaintiffs' dangerousness was not relevant to the sex offender registry law.[44] "[T]he law's requirements turn on an offender's conviction alone—a fact that a convicted

---

[40] Doc. 26 at 3.
[41] Doc. 26 at 6.
[42] Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003).
[43] *Id.* at 4.
[44] *Id.* at 7.

offender has already had a procedurally safeguarded opportunity to contest. No other fact is relevant to the disclosure of registrants' information."[45]

Here too, Plaintiff's competence to stand trial or ability to be prosecuted for failing to register as a sex offender is not relevant to Louisiana's SORNA requirements. Plaintiff is required to comply with SORNA because of her conviction, for which she received due process. Plaintiff's arrests are not "erroneous deprivations" from her interest in liberty where her status as a sex offender has been established through due process.[46] Further, Plaintiff does not cite to any case or describe any process by which a person deemed incompetent can receive a pre-deprivation hearing to prevent future arrest.

Plaintiff next argues that she has been denied procedural due process because she has not received constitutionally adequate notice of her obligations under SORNA in light of her inability to understand those obligations. In so arguing she cites only to *Lambert v. California*, in which the Supreme Court considered the constitutionality of an ordinance that required all persons convicted of a crime that would be a felony under California law to register if they were in the city for a certain period of time.[47] The Court held that actual knowledge or probability of such knowledge of the duty to register were necessary to satisfy the notice aspect of due process.[48] Plaintiff does not, however, cite to any case discussing constitutionally sufficient notice as it relates to the intellectually disabled. And again, Plaintiff does not describe what alternative or substitute process are necessary to satisfy her procedural

---

[45] *Id.* (internal quotation omitted).
[46] *See* Jennings v. Owens, 602 F 3d. 652 (5th Cir. 2010).
[47] Lambert v. People of the State of Cal., 355 U.S. 225, 229 (1957).
[48] *Id.*

12

due process rights. Accordingly, Plaintiff has not alleged a procedural due process claim.

### E. Substantive Due Process Claim

Finally, all Defendants contend that Plaintiff has failed to allege a substantive due process claim. "[T]he Fifth and Fourteenth Amendments' guarantee of 'due process of law' [] include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."[49] Substantive due process protects against arbitrary government action, but "'only the most egregious official conduct' is arbitrary in the constitutional sense."[50]  "[B]ehavior most likely to 'shock the conscience' and thus support a substantive due process claim is 'conduct intended to injure in some way unjustifiable by any government interest.'"[51]

Plaintiff alleges that her liberty interests are being infringed upon by her repeated arrests for charges for which she cannot be prosecuted. She alleges that as a result of the repeated arrests, imprisonment, and release, she has spent more than 100 days in jail, paid thousands of dollars in bail, and had her living arrangements disrupted. In sum, Plaintiff argues that "[a]rresting and imprisoning a woman with intellectual disabilities for failing to complete administrative tasks that her disability makes impossible, and for which the State cannot prosecute her, constitutes a substantive due process violation,

---

[49] Reno v. Flores, 507 U.S. 292, 301–02 (1993).

[50] Coleman v. Dretke, 395 F.3d 216, 224–25 (5th Cir. 2004) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

[51] *Id.* (quoting *Sacramento*, 523 U.S at 849).

13

because it deprives her of her fundamental right to liberty and 'shocks the conscience.'"[52]

The State Defendants argue that Plaintiff's claim for substantive due process fails because it is barred by *Heck v. Humphrey*.[53] They contend that under *Heck*, an allegation that Plaintiff's liberty is "being denied whenever she is arrested or convicted of failing to register implies the invalidity of her convictions for failure to register."[54] Plaintiff rebuts that she is not arguing that her prior convictions for failing to register as a sex offender are invalid. Rather, she argues that since she has been declared an unrestorable incompetent, she has been subject to a "vicious cycle of arrest, imprisonment, release, and rearrest—without conviction."[55]

> Pursuant to *Heck*,
>
> a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[56]

This Court agrees with Plaintiff that her substantive due process claim is not barred by *Heck*. The alleged violation of her constitutional rights is based on her arrests for failure to register as a sex offender after she was declared

---

[52] Doc. 26.
[53] Doc. 61-1, at 8.
[54] *Id.*
[55] Doc. 26.
[56] Heck v. Humphrey, 512 U.S. 477, 487 (1994).

unrestorably incompetent for which she cannot be convicted. These facts are not the "same facts attendant" to her earlier convictions for failing to register as a sex offender. A finding that her rights are being violated by being repeatedly arrested without conviction would not invalidate her earlier convictions. The State Defendant's Motion does not set forth any other ground for dismissal of Plaintiff's substantive due process claim.[57]

The City Defendants, for their part, argue that Plaintiff has not alleged the violation of a fundamental right. They point out that courts have found that sex offender registration laws do not implicate the fundamental right to privacy and that sex offenders do not have a fundamental right to be free from registration requirements.[58] Here, however, Plaintiff has alleged violation of her fundamental right to liberty.[59] Accordingly, this argument for dismissal of Plaintiff's substantive due process claim likewise fails.

### F. *Monell* Liability

Finally, the City Defendants argue that Plaintiff cannot succeed on her claims against them pursuant to *Monell v. Department of Social Services*.[60] Under *Monell*, a plaintiff asserting a § 1983 claim against a municipality must show "(1) the existence of an official policy or custom, (2) a policymaker's actual or constructive knowledge of the policy or custom, and (3) a constitutional

---

[57] "It is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs." Gillaspy v. Dall. Indep. Sch. Dist., 278 Fed. Appx. 307, 315 (5th Cir. 2008).

[58] Doc. 67.

[59] *See* Docs. 1, 26.

[60] 436 U.S. 658 (1978).

violation where the policy or custom is the 'moving force.'"[61] This "policy or custom" requirement extends to claims for injunctive and declaratory relief.[62] The City Defendants argue that Plaintiff's Complaint does not allege any policy or custom that is the moving force behind the alleged constitutional violation.

Plaintiff contends that the New Orleans Police Department ("NOPD") has a policy or practice of arresting individuals for failure to comply with SORNA regardless of their intellectual capabilities or the State's ability to prosecute them for noncompliance. She points out that the decision to arrest is within the NOPD's discretion. She provides evidence that NOPD has a policy of abstaining from arresting indigent individuals subject to SORNA, as long as they are working toward compliance. By contrast, she argues that the NOPD has a policy of *not* exercising its discretion to abstain from arresting individuals with intellectual disabilities who are subject to the requirements of SORNA.

Plaintiff's Complaint, however, does not make any of these allegations. Her Complaint alleges only that she was arrested several times by the NOPD, the seventh time occurring on October 24, 2017. The Complaint also alleges that, in addition to working to keep her in compliance with SORNA, the Orleans Parish Public Defenders' Office sent a letter to the NOPD in July 2018 asking it to refrain from arresting her. The Complaint does not allege that Plaintiff has been arrested since that time. There are no other allegations

---

[61] Pudas v. St. Tammany Par., No. CV 18-10052, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019) (quoting Valle v. City of Houston, 613 F.3d 536, 541–42 (5th Cir. 2010)).

[62] Robinson v. Hunt Cnty., Texas, 921 F.3d 440, 447 (5th Cir. 2019).

16

regarding the NOPD. Accordingly, the Complaint does not allege any policy or practice of the NOPD to sustain a claim for municipal liability under *Monell.*

Plaintiff also argues that "even if discovery later indicates that NOPD is merely 'enforcing state law' rather than acting pursuant to a municipal policy or practice," her claim for injunctive relief should survive pursuant to *Ex Parte Young*.[63] As discussed above, *Ex Parte Young* provides an exception to Eleventh Amendment immunity "that allows private parties to bring suits for injunctive or declaratory relief against individual state officials acting in violation of federal law."[64] Plaintiff alleges that the City Defendants are acting as state officials in enforcing state law. In support of this argument, Plaintiff cites to only one case that found a NOPD officer to be acting as a state actor in enforcing state law.[65] The Fifth Circuit has overruled that opinion, stating that the district court "was not empowered to rule on the merits" of the case.[66] Beyond that, Plaintiff does not provide any analysis or argument justifying her position that the City Defendants are state actors.[67] Accordingly, this Court holds that Plaintiff has failed to allege a claim against the City Defendants.

---

[63] Doc. 26 at 17.

[64] *City of Austin*, 943 F.3d at 997.

[65] Robinson v. Harrison, No. CV 18-4733, 2020 WL 3892814, at *8 (E.D. La. July 10, 2020), *vacated and remanded sub nom.* Robinson v. Ferguson, 849 F. App'x 77 (5th Cir. 2021).

[66] *Robinson*, 849 F. App'x at 80 (5th Cir. 2021) (overruling *Robinson*, 2020 WL 3892814)).

[67] *See* Cozzo v. Tangipahoa Par. Council--President Gov't, 279 F.3d 273, 281 (5th Cir. 2002) ("This court uses a six factor test to determine whether "the state is the real, substantial party in interest."); Hudson v. City of New Orleans, 174 F.3d 677, 681 (5th Cir. 1999).

## CONCLUSION

For the foregoing reasons, the State Defendants' Motion is **GRANTED IN PART**, and the City Defendants' Motion is **GRANTED**.

Plaintiff's claims for nominal damages are **DISMISSED WITH PREJUDICE.** Plaintiff's claims under § 1983 for Eighth Amendment violations are **DISMISSED WITH PREJUDICE**. Plaintiff's claims under § 1983 for Procedural Due Process violations are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims against Mayor of New Orleans Latoya Cantrell and Chief of New Orleans Police Department Shaun Ferguson are **DISMISSED WITHOUT PREJUDICE**. Only Plaintiff's § 1983 claim for declaratory relief for Substantive Due Process violations against the State Defendants remains.

Plaintiff may amend her Complaint within 20 days of this Order to the extent that she can remedy the deficiencies identified herein.

New Orleans, Louisiana this 5th day of June, 2023.

JANE TRICHE MILAZZO
**UNITED STATES DISTRICT JUDGE**

18