## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENDRA GREENWALD**                          **CIVIL ACTION**

**VERSUS**                                                        **NO: 22-2371**

**LATOYA CANTRELL ET AL.**                    **SECTION "H"**

### ORDER AND REASONS

Before the Court is the Plaintiff Kendra Greenwald's Motion for Reconsideration (Doc. 139). For the following reasons, the Motion is **DENIED**, and the dismissal of Plaintiff's ADA claim is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### BACKGROUND

In 2012, Plaintiff Kendra Greenwald was convicted of a sex offense and subsequently required to comply with the registration and notification mandates described in Louisiana's Sex Offender Registration and Notification Act (SORNA). Plaintiff suffers from a seizure disorder that has progressively worsened over time, causing brain damage that has diminished her intellectual abilities and caused short-term and long-term memory loss. Plaintiff alleges that her intellectual and adaptive functioning have declined to the point where

she requires assistance to complete daily tasks, such as maintaining a schedule, financial management, and using public transportation. She alleges that she is functionally illiterate and reads at a first-grade level. Plaintiff alleges that her intellectual disability prevents her from complying with the onerous registration requirements of SORNA.

As a result, Plaintiff has been arrested at least seven times for failing to comply with the requirements of SORNA. After her fourth arrest in July 2015 for failure to comply with the requirements of SORNA, the court ordered a competency evaluation and found Plaintiff to be incompetent to proceed to trial. Thereafter, Plaintiff was arrested three more times for failure to comply with SORNA and held in jail for several days each time. Ultimately, she was found not dangerous and released each time. In June 2017, the court found Plaintiff to be an "unrestorable incompetent."[1] She was arrested after that determination in October 2017 and spent 21 days in prison before her family paid her bond. Plaintiff alleges that each of these arrests impose new requirements and disrupt her living arrangements, making it even more likely that she will be re-arrested for failing to comply with SORNA's requirements.

Plaintiff brought this suit in an effort to put an end to the ongoing cycle of arrest, imprisonment, release, and rearrest against various state and city officials in their official capacities, including Attorney General Liz Murrill;[2]

---

[1] According to the Amended Complaint, Plaintiff's full-scale IQ in 2018 was 48, thirty points lower than her 2011 score. Doc. 70. She also alleges that she scored "extremely low" in every area of intellectual functioning in a 2018 neuropsychological evaluation and reads at a first-grade level. *Id.*

[2] In her Complaint, Plaintiff named Attorney General Jeffrey Landry. Liz Murrill has since been inaugurated as Attorney General and is automatically substituted as a party.

Deputy Superintendent of Louisiana State Police Chris Eskew;[3] Secretary of the Louisiana Department of Public Safety and Corrections James M. LeBlanc; Superintendent of Louisiana State Police Robert Hodges[4] (collectively, the "State Defendants"); Mayor of New Orleans Latoya Cantrell and Chief of New Orleans Police Department ("NOPD") Michelle Woodfork[5] (collectively, the "City Defendants"). After a series of motions to dismiss, only Plaintiff's substantive due process claim remains. The State Defendants have filed an interlocutory appeal of this Court's failure to dismiss Plaintiff's substantive due process claim on *Heck v. Humphrey* or sovereign immunity grounds. In light of the appeal, this Court stayed all discovery against the State Defendants and permitted only written discovery against the City Defendants.[6] In this Motion, Plaintiff asks this Court to reconsider its ruling under Federal Rule of Civil Procedure 54(b) on the State Defendants' Second Motion to Dismiss in which it found that she had not alleged a claim under the Americans with Disabilities Act ("ADA").

## LEGAL STANDARD

A Motion for Reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which states that: "[A]ny order or other

---

[3] In her Complaint, Plaintiff named former Deputy Superintendent of the Louisiana State Police Layne Barnum, who has since retired. Col. Chris Eskew was automatically substituted as a party.

[4] In her Complaint, Plaintiff named former Superintendent of the Louisiana State Police Kevin Reeves, who has since retired. Major Robert Hodges was automatically substituted as a party.

[5] Plaintiff's Amended Complaint substitutes Chief of NOPD Shaun Ferguson with his successor Superintendent of NOPD Michelle Woodfork.

[6] Doc. 163.

decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[7] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration' governing final orders."[8]

## LAW AND ANALYSIS

Plaintiff has asked this Court to reconsider its holding that Plaintiff's Amended Complaint failed to state a cause of action under the ADA. Plaintiff's Amended Complaint alleged that SORNA is a "service, program, or activity" under the ADA and that Defendants have not made reasonable modifications or accommodations to allow her, a woman with intellectual disabilities, to comply with the SORNA registry requirements. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

---

[7] Austin v. Kroger Texas, L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).

[8] Id. (quoting Saint Annes Dev. Co. v. Trabich, 443 Fed.Appx. 829, 831–32 (4th Cir. 2011).

any such entity."[9] To state a claim under under Title II of the ADA, a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."[10] "[A] public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II."[11]

In its Order and Reasons, this Court agreed with Defendants that SORNA is not a "service, program, or activity of a public entity" under the terms of the ADA. It reasoned that:

> As the Fifth Circuit has explained "[t]he ADA does not define the 'services, programs, or activities of a public entity.' The Rehabilitation Act, however, defines a 'program or activity' as 'all of the operations of . . . a local government.'"[12] This Court finds that casting the registration requirements for sex offenders "as a service or activity the benefit of which a disabled person has been denied strains the statutory language to, if not past, the breaking point."[13] Indeed, Plaintiff's Amended Complaint does not set forth any benefit of SORNA that she is being denied.[14] Rather, she alleges that she has been arrested for noncompliance with its requirements. "While the purpose of the ADA is to prevent the discrimination of disabled individuals," the Fifth Circuit has

---

[9] 42 U.S.C. § 12132.

[10] Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011).

[11] Windham v. Harris Cnty., 875 F.3d 229, 235 (5th Cir. 2017).

[12] Frame v. City of Arlington, 657 F.3d 215, 225 (5th Cir. 2011).

[13] Patrice v. Murphy, 43 F. Supp. 2d 1156, 1160 (W.D. Wash. 1999).

[14] *See id.* ("The Court finds that an arrest is not the type of service, program, or activity from which a disabled person could be excluded or denied the benefits."); Rosen v. Montgomery Cnty., 121 F.3d 154, 157 (4th Cir. 1997) ("[C]alling a drunk driving arrest a 'program or activity' of the County, the 'essential eligibility requirements' of which (in this case) are weaving in traffic and being intoxicated, strikes us as a stretch of the statutory language and of the underlying legislative intent.").

explained that it does "not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public."[15] Plaintiff does not provide, and this Court could not find, any case finding a sex offender registry to be a service, program, or activity of a public entity under the ADA or otherwise supporting her position. Accordingly, Plaintiff's allegations do not state a claim under the ADA.

Plaintiff takes issue with this Court's reasoning chiefly because it failed to address her argument that because courts have found that arrests and prisons are covered by Title II of the ADA, then by extension, SORNA should also be covered. In so arguing, Plaintiff cites to *Pennsylvania Department of Corrections v. Yeskey*, in which the Supreme Court considered whether Title II of the ADA covers inmates in state prisons.[16] The Court held that it did, explaining that prisons are "public entities" under the meaning of the ADA and that prisons offer "many recreation 'activities,' medical 'services,' and education and vocational 'programs, all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in.')."[17] It noted that this was true even if participation in these programs or activities was not voluntary.[18] It held that the plain text of Title II applies to the activities of state prisons.[19] But as this Court previously held, SORNA does not offer any of the same types of activities, services, or programs described by the Court in *Yeskey*. Further, SORNA does not

---

[15] Hainze v. Richards, 207 F.3d 795, 801 (5th Cir. 2000).
[16] Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 208 (1998).
[17] *Id.*
[18] *Id.*
[19] *Id.*

6

"theoretically benefit" those to which it applies. The Supreme Court held that prisons were covered by the ADA *because* they offer these activities, services, or programs that benefit prisoners. The holding in *Yeskey* is therefore not helpful in answering the question at issue here.

Next, Plaintiff cites to two Fifth Circuit cases that she contends stand for the proposition that Title II applies to arrests. In *Hainze v. Richard*, the court held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."[20] In that case, the court held that the ADA did not cover the actions of an officer who used deadly force against a mentally ill man holding a knife.[21] The Court held that the man "was not denied the benefits and protections of Williamson County's mental health training by the County. . . . Rather, [the man's] assault of [an officer] with a deadly weapon denied him the benefits of that program."[22] The Court explained that once an area is secure and there is no threat to human safety, then the ADA requires that officers reasonably accommodate disabilities of those with which they interact.[23] Similarly, in *Delano-Pyle v. Victoria County, Texas*, the Fifth Circuit upheld a jury verdict in favor of the plaintiff where officers failed to accommodate the deaf plaintiff during

---

[20] *Hainze*, 207 F.3d at 801.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 802.

7

sobriety tests and an interrogation.[24] Again, this Court does not find these cases particularly illuminating to the question at hand. The fact that officers must sometimes accommodate disabilities during arrests is not dispositive of whether officials must accommodate disabilities in compliance with the consequences of a criminal conviction.

The Court admits that this is a hard question with which it struggled initially and again on reconsideration. However, Plaintiff simply has not given it any sufficient basis upon which to change its decision. The Court remains convinced that SORNA is not a service, program, or activity that provides benefits to Plaintiff or others required to comply with it.

That said, the Court finds that this issue is appropriate for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[25] A substantial ground for difference of opinion can exist where "novel and difficult questions of first impression are presented."[26]

The issue before this Court—whether Title II of the ADA covers sex offender registry requirements, and particularly, Louisiana's

---

[24] Delano-Pyle v. Victoria Cnty, Tex.,302 F.3d 567, 576 (5th Cir. 2002).
[25] 28 U.S.C. § 1292(b).
[26] Fields v. Brown, No. 6:20-CV-00475, 2021 WL 2814893, at *3 (E.D. Tex. May 14, 2021).

8

SORNA—is one of first impression in which there is substantial ground for difference of opinion. Further, an interlocutory appeal is already pending in this matter regarding Defendants' entitlement to sovereign immunity, and much of the matter has been stayed pending the outcome of that appeal.[27] Accordingly, this Court finds it would materially advance the ultimate termination of this litigation if the question of whether Plaintiff can as a matter of law proceed on her ADA claim is answered while the matter is stayed and before the appellate court on other issues. If sovereign immunity is denied and this Court proceeds to final judgment on Plaintiff's substantive due process claim before Plaintiff is permitted to appeal the dismissal of her ADA claim, the final resolution of this matter will be prolonged and piecemeal.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is **DENIED**, and the dismissal of Plaintiff's ADA claim is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

New Orleans, Louisiana this 11th day of March, 2025.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[27] Doc. 163 (staying discovery as to the State Defendants and permitting only written discovery as to the City Defendants). Defendant's appeal has also been stayed pending resolution of the instant Motion to Reconsideration.